# EXHIBIT A

**Name Of Plaintiff**
DUALBOOT PARTNERS, LLC

**Address**
c/o Eric Spengler, 352 N. Caswell Road, Charlotte, NC 28204

**City, State, Zip**

## CIVIL SUMMONS
☒ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

**VERSUS**

**Name Of Defendant(s)**
PRESS SPORTS APP, INC.

**Date Original Summons Issued**
08/02/2022

**Date(s) Subsequent Summons(es) Issued**

### To Each Of The Defendant(s) Named Below:

**Name And Address Of Defendant 1**
PRESS SPORTS APP, INC.
c/o The Corporation Trust Company - Registered Agent
Corporation Trust Center 1209 Orange Street
Wilmington, DE 19801

**Name And Address Of Defendant 2**

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

**Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**
Eric Spengler
SPENGLER & AGANS PLLC
352 N. Caswell Road
Charlotte          NC     28204

**Date Issued** 8-17-22    **Time** 12:33  ☐ AM  ☒ PM

**Signature**
☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ **ENDORSEMENT (ASSESS FEE)**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

**Date Of Endorsement**    **Time**    ☐ AM  ☐ PM

**Signature**
☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG                      22-CVS-12594

DUALBOOT PARTNERS, LLC,            )
                                   )
                    Plaintiff,     )
                                   )
v.                                 )           COMPLAINT
                                   )
PRESS SPORTS APP, INC.,            )
                                   )
                    Defendant.     )
                                   )

NOW COMES Plaintiff Dualboot Partners LLC, by and through undersigned counsel, complaining against Defendants Press Sports App, Inc., alleging as follows:

## VENUE AND JURISDICTION

1. Plaintiff Dualboot Partners ("**Dualboot**" or "**Plaintiff**") is a limited liability company organized under the laws of North Carolina, with a principal place of business in Mecklenburg County, North Carolina. At all relevant times, Dualboot's product director on the Press Sports account, David Olson, and all of the other domestic-based Dualboot employees who worked on Press Sports' account did so while based in Mecklenburg County, North Carolina, with the exception of product director Allen Williams, who is located in Boston, Massachusetts

2. Defendant Press Sports App, Inc. ("**Press Sports**" or "**Defendant**") is a corporation organized under the laws of Delaware, with a principal place of business in Atlanta, Georgia. Press Sports can be served through its registered agent: Conrad Cornell, 75 5th Street Northwest Atlanta, Georgia 30308.

3. This Court has personal jurisdiction over Press Sports, including but not limited to by consent of Press Sports through the Agreement (as herein defined) and under N.C. Gen. Stat.

§ 1-75.4(5)(a), because this cause of action arises out of a promise by Defendant to pay for services to be performed in this State by Dualboot.

4. Dualboot seeks damages in sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C. GEN. STAT. § 7A-243.

5. Venue is proper in Mecklenburg County pursuant to N.C. GEN. STAT. § 1-80 because the cause of action arose in North Carolina, Dualboot usually does business and has property in Mecklenburg County.

## CAUSE OF ACTION: BREACH OF CONTRACT

6. On around October 29, 2021, Dualboot and Press Sports entered into a written "Master Services Agreement" ("MSA").

7. On or around October 29, 2021, Dualboot and Press Sports entered into a written "Statement of Work" to accompany the MSA ("SOW").

8. On or around October 21, 2021, Dualboot and Press Sports entered into a written "Simple Agreement for Future Equity" ("SAFE") to accompany the MSA and SOW (together with the MSA and SOW, the "Agreement").

9. Conrad Cornell signed the Agreement on behalf of Press Sports.

10. The Agreement is a binding and enforceable contract between Dualboot and Press Sports.

11. Pursuant to the Agreement, Press Sports promised to pay Dualboot, on a time-and-material basis, for the support, maintenance, and enhancement of Press Sports's digital application, with payment to be made within 15 days from receipt of monthly invoices by Press Sports.

12. The project was for review of Press Sports' legacy codebase, software development and design services for "PressSportsApp," a software product being built by Press Sports.

13. When Press Sports came to Dualboot, the PressSportsApp product was in a functional but non-scalable state.

14. The SOW included a non-binding estimate that the work to be performed by Dualboot would cost around $30,000 per month with the equivalent of 2.5 full time employees assigned to the project.

15. This non-binding estimate was subject to increase for change of scope, and Press Sports later added significant items to the scope that were not part of the initial budget.

16. The SOW provides the billable rate per hour for services provided to Press Sports;

17. The SOW provides that compensation to Dualboot for hours billed includes 80% cash payable to Dualboot and 20% in the form of deferred compensation, as outlined in the SAFE.

18. The SOW additionally provides that fifteen (15) days after an invoice is issued to Press Sports, Press Sports may, in their sole discretion, choose the pay the invoice in full and no deferred balance shall accrue for that invoice.

19. Section 7 of the MSA additionally provides: "Company will deliver the Deliverables to Client in accordance with the details set forth in the applicable Statement of Work. Client will be deemed to have accepted the Deliverables included in a Statement of Work upon productive use of any portion of such Deliverables or after the period of ten (10) days immediately following an invoice for which Client has not delivered to the Company a written notice of errors related to the Deliverables."

20. Dualboot began providing services in November 2021, consisting of a legacy code audit and design for the project.

21. During the month of November, Dualboot completed 293 design hours, representing a significant amount of design changes per Press Sports request.

22. Press Sports then notified Dualboot that Press Sports would require that the application deploy to Android; the legacy code did not possess this functionality.

23. Dualboot recommended a rebuild of Press Sports application, based on its legacy code review, additional design elements, and desire to deploy to Android as well as IOS devices.

24. Press Sports made the decision to move forward with the new application.

25. Dualboot provided approximately 392 hours of services in November of 2021 and invoiced Press Sports on December 10, 2021 for the amount of $18,937.50.

26. Press Sports paid the November invoice fully in cash on December 13, 2021.

27. From the beginning of development and throughout the relationship between Dualboot and Press Sports, Press Sports regularly and consistently made changes and additions to the scope of the project.

28. Dualboot provided 519.25 hours of services in December of 2021 and invoiced Press Sports on January 11, 2022 for the amount of $51,974.46, consisting of $41,579.57 in cash and $10,394.89 in deferred compensation.

29. Press Sports paid the cash portion of the December invoice on February 12, 2022.

30. On or around January 31, 2022, Dualboot and Press Sports entered into a written Change Order #1 to accompany the Agreement (the "CO1", together with the MSA, SOW and SAFE, the "Agreement").

31. CO1 provided for significant additions and changes to the scope outlined in the SOW, including the commitment of the equivalent of 6 full time employees (rather than 2.5 as provided in the SOW), as well as affirming a 45-day notice requirement to Dualboot should Press Sports desire reduce the team size or terminate the Agreement.

32. Dualboot provided approximately 429 hours of services in January of 2022 and invoiced Press Sports on February 8, 2022 for the amount of $54,958.85, consisting of $43,967.08 in cash and $10,991.77 in deferred compensation.

33. In February, and taking into account the significantly increased scope detailed in CO#1, Dualboot sent Press Sports an updated estimate with a completion date of June.

34. Press Sports paid the cash portion of the January invoice on March 22, 2022.

35. On February 21, 2022, Conrad Cornell emailed the Dualboot team acknowledging that he had made an assumption, without consulting Dualboot, that the application would be done in early April and had communicated that time frame to Press Sports's investors.

36. The below image is a true and correct copy of a portion of the email sent by Conrad Cornell on February 21, 2022:

---------- Forwarded message ----------
From: Conrad Cornell <conrad@presssportsapp.com>
Date: Mon, Feb 21, 2022 at 8:26 PM
Subject: Press Sports / Dualboot - State of Project
To: <kellyanne.oneill@dualbootpartners.com>, <todd.buelow@dualbootpartners.com>, <ben.gilman@dualbootpartners.com>
Cc: Branndon Stewart <branndon@presssportsapp.com>, Heather Harrison <heather@presssportsapp.com>, Harrison Woodward <harrison@presssportsapp.com>, Drew Williams <drew@presssportsapp.com>, <nick@nickhindle.com>

Kelly Anne - I appreciate your time on the phone earlier today. As promised, I've outlined the key issues below that have now reached a culmination point and are undoubtedly the reason our project is falling behind.

1. Scoping - At the beginning of the project we failed to receive a delivery date for the MVP. I share responsibility for not insisting we scope everything beforehand and as a result we now are unable to viably hold you accountable for a delivery date.

Inevitably, when asked by our investors when the app would be delivered, we had no choice but to make assumptions that felt like more than enough time to execute and deliver an MVP launch in early April.

37. At no time did Dualboot communicate or commit to an early April delivery date.

38. In early February, Dualboot team member Divier Martinez was replaced with Dualboot team member Wilfan Salas.

39. Dualboot provided approximately 704 hours of services in February of 2022 and invoiced Press Sports on March 10, 2022 for the amount of $51,482.34, consisting of $41,185.87 in cash and $10,296.47 in deferred compensation.

40. Dualboot applied a $20,000 discount or the equivalent of 400 hours of billed services to the February invoice.

41. This discount was not required by the Agreement, but was offered by Dualboot in good faith to reflect potential time transitioning between team members.

42. Press Sports paid the cash portion of the February invoice on April 15, 2022.

43. On March 1, 2022, Dualboot provided Press Sports with a 25-minute client facing demo of the project at that point in time, which was recorded.

44. At the end of this recorded demo, Press Sports responded with "Great job keep it up."

45. Dualboot provided approximately 738 hours of services in March of 2022 and invoiced Press Sports on April 13, 2022 for the amount of $83,655.00, consisting of $66,924.00 in cash and $16,731.00 in deferred compensation.

46. Dualboot applied a $10,000 discount or the equivalent of 200 hours of billed services to the March invoice.

47. This discount was not required by the Agreement, but was offered by Dualboot in good faith to reflect potential time transitioning between members.

48. Per Section 7 of the MSA detailed above, Press Sports should be deemed to accept the Deliverables included in the March invoice because it did not deliver a notice of errors within ten (10) days of delivery of the invoice.

49. On April 6, 2022, Press Sports requested that the Dualboot team to provide training for Press Sports new internal development team.

50. The below image is a true and correct copy of the Slack message sent by Nick Hindle on April 6, 2022:



51. Training an internal team was a distraction from the development progress and represented additional time and cost not previously included in Dualboot's estimate.

52. On April 12, 2022, the Press Sports internal team removed the ability to deploy or create builds from Dualboot.

53. Builds are used to test the functionality of a specific feature and often reach into the hundreds before an application is fully functional.

54. Despite the additional work this created for Dualboot, Press Sports continued to affirm the development services provided by Dualboot in written form.

55. On April 20, 2002, Conrad Cornell wrote "hey guys great demo today. Really excited about the progress and to get this into the main app."

56. The below image is a true and correct copy of the Slack message sent by Conrad Cornell on April 20, 2022:

🔒 press-sports-client ⌄    👤 14 👥

3  😃  Wednesday, April 20th ⌄

**Caleb Kavanaugh** 2:58 PM
was added to press-sports-client by Bryan Hadaway.

**Conrad** 4:00 PM
@Max Martynov @Denis Kobyakin hey guys great demo today. Really excited about the progress and to get this into the main app. We spoke as a team and want to adjust our plans for the post MVP roadmap to prioritize Music over Resize. We feel as though Music will have a much higher impact on user experience. The user stories have already been created for Music and if it would be helpful would love to hop on a call to answer any questions tomorrow.

57. Additionally, on April 28, 2022, Press Sports Chief Technology Officer Nick Hindle communicated via email, "I'd like to reiterate how happy we are with the video work and the delivery by the [Dualboot] team and look to continue that for the foreseeable future."

58. Dualboot provided approximately 380.5 hours of services in April of 2022 and invoiced Press Sports on May 10, 2022 for the amount of $77,912.50, consisting of $62,330.00 in cash and $15,582.50 in deferred compensation.

59. On May 10, 2022, Press Sports provided notice of termination of the Agreement.

60. As provided in the MSA and CO#1, a terminating party is required to give forty-five (45) days' notice of termination to the other party.

61. As provided in Section 12 of the MSA, "Parties agree they will generally work together in good faith and not disparage or encourage others to disparage the other party."

62. Since notifying Dualboot of their intent to terminate, Press Sports has exhibited both bad faith and threatened to disparage Dualboot, both through email communication and activities intended to harass and threaten Dualboot.

63. On May 10, 2022, Conrad Cornell, emailed Dualboot, stating "I think we all understand the tech community in Atlanta is small."

64. Conrad Cornell additionally emailed Dualboot on May 11, 2022, requesting that Dualboot reimburse Press Sports $100,000 in exchange for a mutual non-disparagement agreement and to end the relationship.

65. After the above emails, Conrad Cornell began "liking" much of the Dualboot LinkedIn activity, demonstrating a marked change in his historical use of the Dualboot page on this social media platform.

66. Additionally, Conrad began attempting to connect with other Dualboot employees through LinkedIn, for no apparent reason other than to harass Dualboot.

67. Upon information and belief, Conrad acting on behalf of Press Sports has disparaged Dualboot to third parties, in violation of the Agreement.

68. Dualboot provided approximately 380.5 hours of services in May of 2022 and invoiced Press Sports on June 9, 2022 for the amount of $21,775.00, consisting of $17,420.00 in cash and $4,355.00 in deferred compensation.

69. Press Sports's refusal to pay Dualboot's invoices in March, April and thru May 10, while accepting the services provided, was a material breach of the Agreement. Press Sports had no contractual basis to withhold payment for Dualboot's services.

70. Press Sport's refusal to give the requisite forty-five (45) days notice caused additional damage to Dualboot in the amount of $108,000, or 1.5 times the monthly cost of 6 FTE as contracted for in CO#1.

71. Dualboot suffered additional damages consisting of the total invoiced amount of $183,342.50 (March, April and May 2022 invoices which were all invoiced and not disputed within the contractual terms and past due) as a direct and proximate result of Press Sports's breach of contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dualboot Partners prays and demands judgment against Defendant Press Sports as follows:

1. enter a judgment against Defendant and order them, jointly and severally, to pay damages to Dualboot in an amount in excess of $25,000;

2. award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action, in addition to pre- and post-judgment interest at the contractual rate;

3. a trial by jury; and

4. award Plaintiff such other and further relief as the Court deems appropriate under the circumstances.

This, the 1st day of August, 2022.

Eric Spengler
N.C. State Bar No. 47165
SPENGLER & AGANS, PLLC
352 N. Caswell Road
Charlotte, NC 28204
eric@sab.law
(704) 910-5469 (phone)
(704) 730-7861 (fax)

*Attorney for Plaintiff*